[Civ. No. 18645. Second Dist., Div. Two. Mar. 13, 1952.]

PEERLESS LAUNDRY SERVICES, LTD. (a Corporation), Respondent, v. CITY OF LOS ANGELES, Appellant.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney, and Edwin F. Shinn, Deputy City Attorney, for Appellant.

Schofield, Hanson & Jenkins and Wendell H. Davis for Respondent.

MOORE, P. J.—Defendant appeals from a judgment in the sum of $5,500 entered upon a verdict in favor of plaintiff for injury to property which occurred when a city fire truck crashed into plaintiff's building. The damage resulted when the vehicle's driver was responding to an emergency call.

The uncontradicted evidence establishes that the fire truck, a "pumper," proceeded south on Main Street at a maximum speed of 40 to 50 miles per hour; the driver applied the brakes reducing speed to about 20 miles per hour as the vehicle entered Slauson Street and attempted to go eastward; he again applied the brakes, but the truck sped on—leaping the 6-inch curb and traversing the 12-foot sidewalk. It came to rest with a violent impact against plaintiff's structure. The driver testified that "he attempted to apply the brakes" but that he may have stepped on the accelerator instead. One of plaintiff's employees testified that after the crash, the pumper driver declared: "I just lost control; couldn't make the turn."

Appellant impliedly concedes that such evidence is sufficient to support a finding that the driver's conduct reflected ordinary negligence but that it is entitled to a reversal on the ground that by virtue of Vehicle Code, section 454, re-

covery against the city cannot be founded on the general principles of law relating to negligence. Such contention requires an examination of the statutes applicable to municipally owned "emergency" vehicles.

Section 400 of the Vehicle Code provides broadly that municipalities are "responsible" for damages resulting from the negligent operation of vehicles owned by them and operated by their employees. Section 401 provides that the *operator* of an *emergency* vehicle shall not be personally liable for any damages resulting from his operation of such vehicle in the line of duty "while responding to an emergency call." Thus, although the driver of a municipally owned vehicle is personally relieved from answering for detriment he may have caused while operating such vehicle on an emergency call, yet section 401 does not abridge the injured party's right of action against the municipality.

However, the employer's liability is largely limited by the provisions of section 454. It is therein provided that the driver of a city vehicle shall be exempt from driving regulations prescribed in chapter 3 and chapters 6 to 13 of division 9 of the Vehicle Code. Such driver shall be entitled to such exemption only when in response to an emergency call he displays a red light visible from the front and proceeds along the streets with siren sounding. Section 454 declares that the driver shall not be relieved from "the duty to drive with due regard for the safety of all persons using the highway nor shall the provisions of this section protect any such driver from the consequences of an arbitrary exercise of the privileges declared in this section."

Pursuant to this statute, it has been determined that the municipality is relieved from liability for any negligence of the operators of its emergency cars that could be otherwise predicated upon a violation of Vehicle Code restrictions. (*Lucas* v. *City of Los Angeles,* 10 Cal.2d 476, 483 [75 P.2d 599] ; *Raynor* v. *City of Arcata,* 11 Cal.2d 113, 117 [77 P.2d. 1054].) Each of the cited cases involved a suit for damages against a municipality for injuries arising out of an intersectional collision between a private automobile and a city owned emergency vehicle. Judgments for the plaintiffs in each action were reversed for the reason that the court instructed the jury to base a finding of negligence on the failure of the emergency vehicle to adhere to certain speed or right of way rules. Appellant has emphasized the

doctrine ''that when the operator of an emergency vehicle responding to an emergency call gives the statutory notice of his approach the employer is not liable for injuries to another, unless the operator has made an arbitrary exercise of these privileges. In such cases, speed, right of way, and all other 'rules of the road' are out of the picture; the only questions of fact, in so far as the public owner is concerned, are first, whether there was an emergency call within the terms of the statute; second, whether the statutory warning was given, and third, whether there was an arbitrary exercise of these privileges.'' (*Lucas* v. *City of Los Angeles, supra,* p. 486.) Relying upon the quoted authority, appellant contends herein that (1) since the statutory warning signals were given, the city can be held liable only in the event it should be found that the driver was guilty of an arbitrary exercise of the privileges granted him; (2) the evidence cannot support such a finding; and (3) that, in any event, a reversal must be ordered inasmuch as the court instructed the jury that a finding of ordinary negligence would suffice to hold the defendant responsible.

Such contentions find no support in the record. The liability of appellant can be founded upon general principles of negligence. Section 454 does not bar recovery under the circumstances presented. The vehicular regulations from which exemption is granted relate to speed, right of way, pedestrian duties, streetcars and safety zones, stopping, standing and parking. There is no blanket exemption of municipalities from all the rules that govern the operation of motor vehicles. The Legislature has not declared that negligence may not be predicated upon acts or conduct not exempt. ▮ Accordingly, if the harm caused results from negligence not based upon an exempt restriction, section 454 is inapplicable and the city must be held responsible by virtue of section 400 of the Vehicle Code which makes every municipality responsible for injury to person or property as the result of the negligent operation of any city owned motor vehicle operated by any agent or employee of the city acting within the scope of his employment; also, one injured in his person or property may sue the city.

The evidence herein reveals no disregard of speed regulations, neither does it show a violation of any rule in regard to the manner of turning the vehicle or use of improper highway lanes that could have proximately caused the accident. The jury could have found only that appellant's driver failed

to exercise ordinary care to maintain sufficient control over his vehicle to keep it on the street. ■ The accident is difficult to explain otherwise than on the theory that the driver while making his turn on Slauson looked to the east, as he testified, in an attempt to view other pieces of fire apparatus preceding him, and that in doing so he relaxed his vigilance over the progress of his own vehicle for too long a period. This coupled with defective brakes caused the collision with respondent's building. Such conduct could properly be found to be negligence and not the result of a disregard of any regulation as to which the driver is granted immunity by section 454.

Moreover, respondent's argument that section 454 was never intended to have application to a situation such as is here presented appears to be sound. The purpose of the statute is to provide a "clear and speedy pathway" for these municipal vehicles on their flights to emergencies in which the entire public are necessarily concerned. (*Lucas* v. *City of Los Angeles, supra,* p. 483.) Further indication that section 454 was not intended to be applicable to such a situation as is here involved is the fact that the exemptions come into play only when a siren and red lamp are in operation so as to give audible and visual notice to others to yield the right of way and thus protect themselves and all concerned. Screaming sirens and flashing red lights could in no way have given respondent an opportunity to protect its property or to avert the crash which resulted. ■ Appellant's construction of section 454 would operate to give emergency-bound vehicles free rein to speed in disregard of persons and property so long as the statutory warnings are given. Such interpretation certainly could not reasonably have been the legislative intent in drafting the statute.

■ Appellant also assigns as prejudicial error the giving of instructions to the effect that if defendant operated its vehicle with brakes that were not adequate to stop it within 37 feet when traveling at 20 miles per hour and that if such brake failure was a proximate cause of the accident then their verdict must be in favor of plaintiff. It is asserted that the evidence is insufficient to permit liability to be predicated on the theory of defective brakes. The evidence on this point reveals that upon reaching the intersection at Slauson the fire truck was traveling approximately 20 miles per hour; the driver applied the brakes when midway into the intersection—more than 60 feet from the place of the

subsequent impact; the truck did not immediately slow down but continued forward over the curb and did not reduce speed until 10 to 15 feet from the building. Its speed was about 10 miles per hour when it struck respondent's wall. From the force of the impact the vehicle's fender was crushed, bumper dislocated and right front tire flattened. Appellant's only evidence on the point was that the brakes worked properly on a previous trip that day, and the pumper had been placed in service only 25 days prior to the accident. It was a reasonable inference that the brakes were not functioning as required by Vehicle Code, section 670(a). It is there provided that on dry asphalt or concrete pavement on a grade less than 1 per cent, brakes must be adequate to halt a vehicle going 20 miles per hour within 37 feet. Where from the testimony received with reference to the driver's actions and as to the physical facts relating to the collision the jury might reasonably conclude that the statutory standards were not met, such instructions are not erroneous. (*Cavagnaro* v. *City of Napa*, 86 Cal.App.2d 517, 520 [195 P.2d 25]; *Vedder* v. *Bireley*, 92 Cal.App. 52, 58 [267 P. 724].)

Judgment affirmed.

McComb, J., and Fox, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 8, 1952. Edmonds, J., was of the opinion that the petition should be granted.