2002 ME 78

**Thomas C. THOMPSON Jr.**

v.

**DEPARTMENT OF INLAND
FISHERIES AND
WILDLIFE et al.**

Supreme Judicial Court of Maine.

Argued: April 2, 2002.
Decided: May 13, 2002.

Robert J. Gilbert (orally), Edward J. Denn, Gilbert & Renton, Andover, James G. Goggin, Charles G. Soltan, Verrill & Dana, LLP, Portland, for plaintiff.

G. Steven Rowe, Attorney General, Andrew S. Hagler, Asst. Attorney General (orally), Augusta, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1]   Thomas C. Thompson, Jr., appeals from the judgment entered in the Superior Court (Kennebec County, *Atwood*, J.) dismissing his negligence claim against the State of Maine, the Department of Inland Fisheries and Wildlife, the Maine Warden Service, the Maine Army National Guard, and the Maine Army National Guard's 112th Medical/Medvac Company (collectively "the State") on the basis of sovereign immunity.  Thompson argues that the court erred by dismissing his claim because it states a cause of action that falls within the exception to sovereign immunity, provided in 14 M.R.S.A. § 8104–A(1) (Supp.2001), for negligent ownership, maintenance or use of vehicles, aircraft, snowmobiles and other machinery or equipment.  We disagree and affirm the judgment.

## I.  BACKGROUND

[¶ 2]   On March 9, 2001, Thompson filed a complaint in the Superior Court that alleged the following facts:  Thompson was gravely injured in a snowmobile accident in the afternoon of March 13, 1999;  the accident occurred on a portion of a snowmobile trail maintained and patrolled by the Department of Inland Fisheries and Wildlife;  and Thompson's rescue was delayed by hours because of the State's negligent acts with regard to its "ownership, maintenance, and use of the rescue vehicles, aircraft, snowmobiles and other machinery at [its] disposal."  Specifically, Thompson claimed that the National Guard Medvac helicopter that had been dispatched to rescue him was unable to locate the extraction point because (1) it was equipped with navigational equipment

that was incompatible with the equipment used by the Warden Service's ground units, (2) it was inadequately fueled to enable it to continue searching for a sufficient amount of time, and (3) the Warden Service's ground units were not equipped with adequate radio communications equipment.[1]  Thompson claims that the injuries he suffered from the snowmobile accident were exacerbated by this negligence.

[¶ 3]   The State moved to dismiss Thompson's complaint and the Superior Court granted the motion, finding that all defendants were immune from liability. Thompson then timely filed the present appeal.

## II.  DISCUSSION

[¶ 4]   The State's motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) tests the legal sufficiency of Thompson's complaint:

> We view the material allegation of the complaint as admitted and examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory.  A dismissal is appropriate only when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim.  The legal sufficiency of a complaint is a question of law.

*New Orleans Tanker Corp. v. Dep't of Transp.*, 1999 ME 67, ¶ 3, 728 A.2d 673, 674–75 (citations and quotations omitted).

[¶ 5]   The Maine Tort Claims Act (MTCA) provides immunity to governmental entities from all tort claims seeking damages "[e]xcept as otherwise expressly

---

1.  These specific facts were not alleged in the complaint.  We consider them as supplemental to the complaint, as did the Superior Court, because they are not disputed by the parties for purposes of the present analysis and because doing so will expedite the proper resolution of this dispute.  *See* M.R.App. P. 14(c).

provided by statute." 14 M.R.S.A. § 8103(1) (1980). The MTCA expressly exempts from immunity the negligent acts or omissions of a governmental entity in the "ownership, maintenance or use" of its motor vehicles, special mobile equipment, trailers, aircraft, watercraft, snowmobiles and other machinery or equipment. 14 M.R.S.A. § 8104–A(1) (Supp.2001).[2] In interpreting exceptions to immunity, "we start from the premise that immunity is the rule and exceptions to immunity are to be strictly construed." *New Orleans Tanker Corp.*, 1999 ME 67, ¶ 5, 728 A.2d at 675. We have recognized that the MTCA employs an " 'exception-to-immunity' approach rather than an 'exception-to-liability' approach." *Id.* (quoting *Young v. Greater Portland Transit Dist.*, 535 A.2d 417, 419 (Me.1987)).

■ [¶ 6] Thompson argues that the State's failure to sufficiently fuel the helicopter and to maintain adequate communication and navigation equipment squarely falls within the plain meaning of "ownership, maintenance or use" of vehicles. In support, he cites several cases from other jurisdictions that involve the interpretation

of similar language in insurance policies. None of these cases, however, persuade us that the negligence alleged in the present case falls within the MTCA's exception to immunity for negligent ownership, maintenance, or use of the State's vehicles and other machinery or equipment listed in section 8104–A(1). Cases involving the interpretation of insurance policies generally employ a rule of construction in favor of coverage. This approach is inconsistent with the strict rule of construction in favor of immunity that is applicable in cases involving statutory exceptions to sovereign immunity. Compare *Roche v. United States Fid. and Guar. Co.*, 247 A.D. 335, 337, 287 N.Y.S. 38 (N.Y.App.Div.1936) (applying "rule of liberal interpretation") and *State Farm Fire & Cas. Co. v. Salas*, 222 Cal.App.3d 268, 274, 271 Cal.Rptr. 642 (Cal.Ct.App.1990) (interpreting exclusion in favor of coverage) with *New Orleans Tanker Corp.*, 1999 ME 67, ¶ 5, 728 A.2d at 675 (construing exception to immunity strictly).[3]

[¶ 7] We have made clear that the kind of negligence falling within the exception to immunity provided in section 8104–A(1)

---

2. Section 8104–A(1) provides:

**1. Ownership; maintenance or use of vehicles, machinery and equipment.** A governmental entity is liable for its negligent acts or omissions in its ownership, maintenance or use of any:

A. Motor vehicle, as defined in Title 29–A, section 101, subsection 42;

B. Special mobile equipment, as defined in Title 29–A, section 101, subsection 70;

C. Trailers, as defined in Title 29–A, section 101, subsection 86;

D. Aircraft, as defined in Title 6, section 3, subsection 5;

E. Watercraft, as defined in Title 12, section 1872, subsection 14;

F. Snowmobiles, as defined in Title 12, section 7821, subsection 5; and

G. Other machinery or equipment whether mobile or stationary.

The provisions of this section do not apply to the sales of motor vehicles and equipment at auction by a governmental entity.

14 M.R.S.A. § 8104–A(1).

3. Most of the cases cited by Thompson which involve claims of negligence predicated on failure to adequately maintain a vehicle do not involve the interpretation or application of statutes with language similar to section 8104–A(1). *See, e.g., Coto Orbeta v. United States*, 770 F.Supp. 54, 58 (D.P.R.1991) (holding that United States's failure to maintain brakes on vehicle causing injuries was negligence falling within Federal Tort Claims Act waiver of immunity for negligent acts by government employee acting within scope of office or employment); *Deutsche Shell Tanker-Gesellschaft v. Placid Refining Co.*, 767 F.Supp. 762, 790 (E.D.La.1991) (finding that negligent maintenance of radar systems caused grounding of tanker); *Plumb v. Burnham*, 151 Neb. 129, 36 N.W.2d 612, 619 (1949) (upholding jury instruction that automobile driver has duty to maintain automobile's fuel supply in such condition that auto-

involves harms that flow naturally or directly from the negligent use or maintenance of vehicles. In New Orleans Tanker Corp., we upheld the dismissal of a complaint brought against the Maine Department of Transportation alleging that the negligent operation of the bridge leaf machinery on the Portland South Portland Bridge caused damage to the plaintiff's tanker. 1999 ME 67, ¶ 14, 728 A.2d 673, 677. We explained that

> [i]n order for there to be liability for the negligent use or operation of 'other machinery or equipment,' we require that the risk from the negligent use of the 'other machinery or equipment' be comparable to the risk that results from the negligent use of the vehicles listed in section 8104–A(1)(A) through (F).

*Id.* ¶ 6, 728 A.2d at 675. We recognized that the "major risk from the negligent use of vehicles with the power to move is that they will be driven or transported in locations where the general public is exposed to the possibility of a collision and resulting harm." *Id.* ¶ 9, 728 A.2d at 676.

[¶ 8] In interpreting section 8104 A(1), therefore, the focus is on the risk of harm naturally or directly caused by the vehicle's contact with the general public. This is reflected in *Brooks v. Augusta Mental Health Inst.*, 606 A.2d 789 (Me.1992), where we found that section 8104–A(1) was inapplicable in a case involving a patient who jumped to her death from a moving bus. The gravamen of the plaintiff's claim was not for negligent operation, use, or maintenance of the bus but, rather, for negligent monitoring and supervision of the patient. *Id.* at 790. In Brooks, dismissal of the plaintiff's complaint was proper because the injury suffered was not the natural or direct result of contact with the bus.

[¶ 9] In the present case, Thompson has alleged that his rescue was delayed for hours by the State's negligence and that this delay caused him to suffer additional injuries. As the Superior Court held, the gravamen of this complaint is that Thompson was harmed not by contact with a negligently operated or maintained vehicle, but by the State's failure to execute an efficient rescue.[4] Negligence in the execution of a rescue does not fall within the MTCA's exception to immunity for negligence in the ownership, maintenance, or use of the State's vehicles. The Superior Court did not err, therefore, in dismissing Thompson's complaint.

The entry is:

Judgment affirmed.

---

mobile does not "become a menace to, or obstruction of, other traffic by stopping on the road"). One case cited that did involve the application of a statute similar to section 8104–A(1), *Peerless Laundry Services, Ltd. v. City of Los Angeles*, 109 Cal.App.2d 703, 241 P.2d 269 (Cal.Ct.App.1952), is distinguishable from the present case because the harm caused by a fire engine that collided with plaintiff's laundry building flowed naturally or directly from the negligent maintenance of the fire engine's brakes. *See id.* at 704, 241 P.2d 269.

4. In *Sadler v. New Castle County*, 565 A.2d 917 (Del.1989), the Delaware Supreme Court, faced with a claim of negligence in the execution of a rescue, determined that the actions of the defendant governmental entities fell within the statutory grant of immunity for the performance of discretionary functions. *Id.* at 921. In so doing, the court explicitly rejected the claim that the alleged negligence fell within the exception to immunity for negligent use of "equipment" because it had not been alleged that the equipment produced or was the instrument of the harm. *Id.* at 922. We do not address the applicability of discretionary function immunity in the present case because the parties did not argue it below. *See* 14 M.R.S.A. § 8104–B(3) (Supp.2001).